386 So.2d 1079 (1980)
STATE of Louisiana In the Interest of Merlin Joseph LEWIS.
No. 7741.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1980.
*1081 Camp, Carmouche, Palmer, Barsh & Hunter, Adam L. Ortego, Jr., Lake Charles, for defendant-appellant.
Ronald A. Rossitto, Asst. Dist. Atty., George Woolman, Chief Probation Officer, Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
GUIDRY, Judge.
Merlin Joseph Lewis was adjudicated a delinquent child in proceedings had in the Juvenile Court of the Parish of Calcasieu on February 8, 1980. This judgment was based on a finding that Merlin had committed the following offenses: (1) LSA-R.S. 14:108(b), resisting arrest; (2) LSA-R.S. 14:63.3, entry on or remaining in places after being forbidden; and, (3) LSA-R.S. 14:38, simple assault. In a judgment of disposition signed February 11, 1980, the trial judge ordered Merlin committed to the custody of the Department of Corrections for a term of six months.[1]
This proceeding arises from an incident which occurred at the Sears and Roebuck Store in Lake Charles, Louisiana. On December 31, 1979, at approximately 5:30 p. m. Merlin was attempting to return a heater that his mother had bought at Sears. Merlin brought the heater to the office of Elizabeth Jegelewicz, a store manager, complaining that the heater did not work and demanded a refund. Jegelewicz, accompanied by Merlin, took the heater to be checked at the Quick Service Department. The heater apparently worked and Jegelewicz informed Merlin that it was not normal procedure to give money back on something that was working properly. Merlin insisted on returning the heater and produced a receipt. The receipt however was for something else as it reflected a different stock number and price than that of the heater. Jegelewicz then escorted Merlin to the paint and electrical department where they sell heaters to see if perhaps someone there had waited on him and given him the wrong receipt. When Jegelewicz could not find anyone who had waited on Merlin she informed him that she could not give him a refund without a proper receipt, but if he would wait until the following day of business so that they could verify the sale she would then make a refund. Apparently unsatisfied with this result Merlin replied that he would not leave and wanted his money at that time. As Jegelewicz repeatedly explained why she would not make a refund Merlin became increasingly louder in his demand for a refund. Finally Jegelewicz told Merlin he was going to have to leave the store as he was being too loud and was creating a disturbance. Merlin reportedly said in a loud voice he was not going to leave the "damned" place until he got his money and that she could go ahead and call the police, which she did. Jegelewicz then escorted Merlin back to her office area where he took a seat in a chair in the entranceway of Jegelewicz's office to await the arrival of the police.
Sergeant William E. Bushnell of the Lake Charles Police Department responded to the call put out by police headquarters which reported that an intoxicated black male subject was creating a disturbance in the paint section of Sears. Upon arrival at the store, Sgt. Bushnell was directed to Jegelewicz's office. Sgt. Bushnell talked first with Jegelewicz who pointed out Merlin as the one who created the disturbance and informed the officer that Merlin refused to leave after being so requested. Jegelewicz also related to the officer that because of Merlin's demeanor it was her opinion that Merlin was under the influence of alcohol and also that it was her suspicion that the *1082 heater was a stolen item because of the improper receipt which was produced in the attempt to get a refund.
Sgt. Bushnell approached Merlin and asked him for identification. Merlin did not have any identification and was not responsive to the questions of the officer. At that point Sgt. Bushnell was within a couple of feet of Merlin and, according to Sgt. Bushnell, he could smell alcohol on Merlin. Sgt. Bushnell then informed Merlin he was under arrest for disturbing the peace. Merlin was still sitting in the chair and refused to go with Sgt. Bushnell despite repeated explanations by the officer that he was under arrest and that he had to leave the store at that time with the officer. Merlin advised Sgt. Bushnell that he was not under arrest, that he would not go to jail, and that if the officer tried to take him out of that chair he was going to whip the officer. Sgt. Bushnell then placed his left hand on Merlin's right arm and told Merlin to come along. When Sgt. Bushnell pulled on Merlin, Merlin started to strike the officer with his left hand. Anticipating the blow, Sgt. Bushnell hit Merlin and pulled him from the chair. A scuffle ensued and Merlin was finally subdued. As Sgt. Bushnell was removing Merlin from the store Merlin tried to break away, but was again subdued by the officer and then taken to police headquarters by two officers who had arrived in a police unit.
On January 3, 1980, the State of Louisiana filed a petition in the Juvenile Court of the Parish of Calcasieu alleging that the Juvenile Court had jurisdiction over Merlin and requesting he be adjudicated a delinquent child. The petition specifically alleged that Merlin was under seventeen years of age and that his birthdate, as verified by school records, was July 31, 1963. Said petition charged Merlin with violating LSA-R.S. 14:103(A)(2), disturbing the peace; and LSA-R.S. 14:108(b), resisting arrest.
On February 1, 1980, over the objection of defense counsel, the State filed an amended and supplemental petition alleging Merlin additionally violated LSA-R.S. 14:63.3, entry on or remaining in places after being forbidden; and, LSA-R.S. 14:38, simple assault.
At the adjudication hearing on February 8, 1980, Elizabeth Jegelewicz and Sgt. Bushnell testified on behalf of the State. The defense presented no evidence. Merlin, through counsel, did file a motion to dismiss alleging that LSA-R.S. 14:103(A)(2) is unconstitutional, that the arrest of Merlin was unlawful, and that Merlin therefore properly resisted his arrest. After the hearing, the trial court denied defendant's motion to dismiss and concluded that the evidence warranted the requested adjudication of delinquency and found Merlin guilty of refusing to leave the Sears store after being instructed to do so, resisting Sgt. Bushnell's arrest, and committing simple assault on Sgt. Bushnell. The trial court adjudicated Merlin innocent of the disturbing the peace charge. After a disposition hearing, conducted immediately after the adjudication of delinquency, Merlin was committed to the Department of Corrections. On this appeal of his adjudication of delinquency and commitment, Merlin relies on six assignments of error.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial court erred in allowing the original petition to be amended on February 1, 1980, one week prior to trial. In brief defendant asserts that by this amendment the State was attempting to legitimize an otherwise illegal arrest.
The question of whether the arrest of Merlin was lawful depends on the facts and circumstances existing at the time of arrest as shown by the evidence adduced at the hearing. Any subsequent actions, or pleadings in this case, taken by the State cannot ex post facto legitimize what would otherwise be an unlawful arrest.
The amending of a petition to adjudicate a child delinquent is specifically authorized by LSA-C.J.P. Article 50 which provides as follows:

*1083 "A. With leave of court, at any time, the district attorney or the person filing the petition may amend the petition to cure defects of form.

B. With leave of court, prior to the adjudication hearing, the district attorney or the person filing the petition may amend the petition to include new allegations of fact or requests for adjudication.
C. If a petition is amended prior to the adjudication hearing to include new allegations of fact or requests for adjudication, the child may request a continuance of the adjudication hearing. A continuance may be granted for such period as is required in the interest of justice.
D. In delinquency proceedings, after the commencement of the adjudication hearing, a petition shall not be amended to include new allegations of fact or requests for adjudication."
The record shows that on the date the petition was amended the adjudication proceeding had not commenced as same had been refixed for February 8, 1980, by joint motion of counsel on February 1, 1980. We conclude that the trial court did not err in allowing the original petition to be amended as provided for by statute and that defendant's first assignment of error is without merit.

ASSIGNMENT OF ERRORS NOS. 2 AND 4
Defendant contends the trial judge erred in denying the motion to dismiss. Defendant alleges as grounds therefor the unconstitutionality of LSA-R.S. 14:103(A)(2) and the propriety of Merlin's resistance to what he asserts was an unlawful arrest. The latter ground constitutes defendant's fourth assignment, i. e., that the trial court erred in failing to find that the defendant had properly resisted an unlawful arrest.
Defendant's motion to dismiss was filed at the commencement of the adjudication proceeding on February 8, 1980, and a ruling on the motion was deferred until after the completion of the taking of evidence at the request of defense counsel. In such a context the substance of the motion to dismiss is more appropriately considered as a defense on the merits of the case rather than a request for the pre-adjudicatory relief of dismissal based on defects in the petition and defenses capable of determination as a matter of law.[2]
Within this context the trial judge in oral reasons stated that he was not called upon to rule on the constitutionality of LSA-R.S. 14:103(A)(2) as this latter charge was dismissed on the basis of his finding there was not sufficient evidence to convict. We agree with the trial court that at the time the trial court was asked to rule on the matter, the question of constitutionality of LSA-R.S. 14:103(A)(2) had become moot. We conclude that the trial court made no error in this regard.
The merit of defendant's argument that he was within his rights to resist the arrest by Sgt. Bushnell hinges on whether or not said arrest was lawful. A citizen has the right to resist an unlawful arrest. White v. Morris, 345 So.2d 461 (La. *1084 1977). Whether an arrest is lawful depends upon whether probable cause exists. Article 213 of the Louisiana Code of Criminal Procedure, in pertinent part provides:

"A peace officer may, without a warrant, arrest a person when:
. . . . .

(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer..."[3]
Our Supreme Court explained the concept of probable cause, i. e., "reasonable cause", in State v. Billiot, 370 So.2d 539 (La. 1979), as follows:

"Probable cause exists when the facts and circumstances known to the arresting officer, and of which he has reasonably trustworthy information, are sufficient to justify a person of ordinary caution in believing that the person to be arrested has committed a crime. State v. Davis, 357 So.2d 519 (La.1978); State v. Dunbar, 356 So.2d 956 (La.1978); State v. Johnson, 249 La. 950, 192 So.2d 135 (1966). To determine the existence of probable cause, the court must examine the ` "facts and circumstances within the arresting officer's knowledge, and of which he has reasonably trustworthy information;"' State v. Linkletter, 345 So.2d 452 (La. 1977); and do so in light of the experience of reasonable people, not legal technicians. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Probable cause is not absolute cause. Actions of lawmen, therefore, may be supported by less evidence than would justify a conviction. The strength of the requisite probable cause varies with the magnitude of the intrusion and the alternatives available to the peace officer. In the first instance the determination of probable cause is a matter for the trial judge depending, as it often does, upon factual determinations and the credibility of witnesses."

In applying these principles to the case at hand, we find there was probable cause to arrest Merlin. Prior to placing Merlin under arrest Sgt. Bushnell had been informed by Jegelewicz, a store manager, that Merlin, apparently intoxicated, had created a major disturbance in the paint and electrical department using loud and profane language and had refused to leave the store after having been told to do so. While Jegelewicz was talking to Sgt. Bushnell, Merlin, sitting nearby, was uttering profanities in refutation to Jegelewicz's statements. As Sgt. Bushnell attempted to explain the situation to Merlin and question him as to his identity and the incident, Merlin, who smelled of alcohol, was uncooperative and abusive in his language. The fact that Merlin remained in the store where he had been forbidden to remain constituted an offense in progress. From the totality of these facts and circumstances Sgt. Bushnell was of the opinion that he could not have left Merlin in the store without creating a further disturbance and that he had probable cause to arrest Merlin for drunk and disorderly conduct (disturbing the peace). We agree and conclude that the arrest of Merlin was lawful and he was without any right to resist said arrest.
We note that although the constitutional question concerning LSA-R.S. 14:103(A)(2) was pretermitted because of mootness, such issue would not affect our conclusion as to the lawfulness of the arrest of Merlin under said provisions. Although a different version of LSA-R.S. 14:103(A)(2) was held unconstitutional by the Louisiana Supreme Court in State v. Adams, 268 So.2d 228 (La.1972), the legislature amended said statute by Acts 1979, No. 222, Section 3, effective *1085 September 7, 1979, attempting to cure the constitutional defects pointed out in State v. Adams, supra. As of the date of arrest the amendment was in effect and no court has held it unenforceable because unconstitutional. Even should this amendment be subsequently declared constitutionally null and void, defendant was not legally entitled to resist an arrest based upon said statute, as amended. See City of New Orleans v. Lyons, 342 So.2d 196 (La. 1977).

ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial court erred in finding him guilty of refusing to leave the Sears store after being instructed to do so, resisting arrest and simple assault.
In a juvenile proceeding no child may be adjudged to be delinquent in the absence of proof beyond a reasonable doubt of every element of the offense alleged in the petition for the adjudication of delinquency. LSA-C.J.P. Article 73. See In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); State of Louisiana in the interest of Batiste, 359 So.2d 1077 (La.App. 3rd Cir. 1978), affirmed 367 So.2d 784 (La.1979).
We have carefully reviewed the record as to the factual and the legal conclusions made by the trial court regarding Merlin's guilt in light of the evidence adduced and the essential elements of the offenses charged. We are satisfied that the State met its burden of proving beyond a reasonable doubt the delinquent acts for which Merlin was adjudicated a delinquent child and that the trial court made no error in so finding. We find no merit in defendant's third assignment of error.

ASSIGNMENT OF ERROR NO. 5
Defendant argues that the doctrine of double jeopardy precludes an adjudication of guilt for simple assault after an adjudication of guilt is obtained for resisting arrest.
In the recent case of State v. Solomon, 379 So.2d 1078 (La.1980) our Supreme Court commented on the application in this state of the constitutional principle of double jeopardy:
"Both the Louisiana and the United States Constitutions provide that no person shall be twice put in jeopardy of life or liberty for the same offense. U.S. Const. amend. 5; La.Const. art. 1, sec. 15 (1974). Article 596 of the Louisiana Code of Criminal Procedure states that double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial. (emphasis added)
Thus, defendant submits for our review whether the burglary charge and theft conviction are the `same offense' for double jeopardy purposes.

This Court has adopted the `same evidence' test to determine the identity of offenses. This test holds that two offenses are the same for double jeopardy purposes if the same evidence is required for the conviction of each offense. If one offense requires proof of additional facts which the other does not, then the accused may be tried and convicted on both offenses unless the gravamen of the second offense is essentially included within the offense for which first tried, in which case the second prosecution is barred because of former jeopardy. State v. Nichols, 337 So.2d 1074 (La.1976); State v. Didier, 262 La. 364, 263 So.2d 322 (1972).

In applying this test, we have stated that double jeopardy exists when the two charges arise from identical conduct. State v. Bonfanti, 262 La. 153, 262 So.2d 504 (1972); State v. Didier, supra. Thus, simple battery and indecent behavior with juveniles were the same offense for double jeopardy purposes where both charges were based upon the defendant's putting his hands up the prosecutrix's *1086 dress, State v. Bonfanti, supra. Similarly, malfeasance in office and a charge of robbery and theft as a principal were treated as the same offense where the defendant's malfeasance consisted of his aiding and abetting the robbery-theft by failing to prevent it, to apprehend the participants, or to report the crime. State v. Didier, supra."
Defendant in the instant case, argues that the charges of simple assault and resisting arrest arose out of the same transaction which constitutes one offense and therefore the doctrine of double jeopardy should be applied.
We disagree that the actions of Merlin constituted one offense. While the charges for resisting arrest and simple assault may have arisen from the same delinquent episode or transaction, this factor does not preclude the state from adjudicating defendant guilty for both offenses. Our jurisprudence has consistently rejected the contention that an accused who commits separate and distinct offenses during the same criminal episode or transaction may not be prosecuted and convicted for each offense. See State v. Nichols, 337 So.2d 1074 (La.1976), and cases cited therein. This principle is equally applicable in a proceeding for the adjudication of a delinquent child.
Considering the principles as outlined in State v. Solomon, supra, and State v. Nichols, supra, we are convinced that defendant's plea of double jeopardy is without merit. Merlin committed the offense of resisting an officer, as defined by LSA-R.S. 14:108[4], when, after being told he was under arrest, he refused to go with Sgt. Bushnell and threatened to whip him if he attempted to remove him from the chair; when Merlin opposed the officer's attempt to pull him from the chair; Merlin scuffled with and then attempted to breakaway from Sgt. Bushnell; and, additionally when he fought with two other policemen who had arrived as backup.
In contrast, the amended petition alleging Merlin violated LSA-R.S. 14:38[5] (simple assault), recites that "he (Merlin) did attempt to commit a battery upon, and did intentionally place Sergeant William Bushnell of the Lake Charles Police Department in reasonable apprehension of receiving a battery." The essential elements to be proven for a conviction of simple assault are totally distinct and different from those necessary for conviction of resisting an officer. Furthermore, the gravamen of the offense of simple assault is clearly not essentially included within the offense of resisting an officer.
We conclude, therefore, that the trial court did not err by adjudicating Merlin *1087 guilty of simple assault in addition to resisting arrest.

ASSIGNMENT OF ERROR NO. 6
In defendant's last assignment of error he argues that the age of the child is an essential element which the State must prove by competent evidence beyond a reasonable doubt and that in the instant case the trial court erred in concluding that there was sufficient proof of Merlin's age.
The basis for defendant's argument is that Article 73 of the Code of Juvenile Procedure provides that if the State files a petition requesting that a child be adjudicated a delinquent, the State bears the burden of proving beyond a reasonable doubt that the child committed the delinquent act alleged in the petition. The definition of delinquent act, LSA-C.J.P. Article 13(7),[6] includes the language that a delinquent act means an act committed by a person less than seventeen years of age. The State's petition specifically alleges defendant's age as sixteen years old as verified by school records, however, said records or any other documentary evidence as to defendant's age were not attached to the petition or made a part of the record. The only evidence that Merlin was a juvenile was Merlin's own reported statement that he was a juvenile which was admitted into evidence as part of the res gestae over defendant counsel's objection of hearsay.
Although evidence of age is necessary for jurisdictional purposes, it is not an essential element of the "delinquent act" which need be proven beyond a reasonable doubt. It is only the alleged "offense" which the child is accused of committing that need be proven beyond a reasonable doubt.
Defendant's proper procedural vehicle to raise the question of jurisdiction of the juvenile court because of his age would have been by motion to dismiss under LSA-C.J.P. Article 65. As defendant did not move to dismiss under Article 65 or present any evidence contrary to the State's specific allegation of defendant's age, we cannot say the trial court erred in concluding there was sufficient proof of Merlin's age so as to exercise jurisdiction over Merlin in this matter.
For the reasons assigned the adjudication of Merlin Joseph Lewis as a delinquent child and the commitment of Merlin Joseph Lewis to the Department of Corrections from which he appeals is hereby affirmed.
AFFIRMED.
NOTES
[1] This period of commitment represents the concurrent running of terms set by the trial judge for the discrete offenses set forth above, viz, 6 months for resisting arrest; 6 months for entry on or remaining in places after being forbidden; and, 90 days for simple assault.
[2] Chapter 9 of the Code of Juvenile Procedure, entitled Pre-adjudication Motions and Relief, provides the following articles relevant to pre-adjudication relief:

Art. 58:
"A. All requests for relief prior to the adjudication hearing shall be made by written motion filed within fifteen (15) days after the child or his counsel has appeared to answer the petition.
The motion shall state with particularity the grounds therefor and shall set forth the relief sought.
B. The court may permit such requests to be made by oral motion.
In the interest of justice, the court may allow additional time within which to make or file such motions.
C. A motion may be granted without a contradictory hearing when movant is clearly entitled thereto without supporting proof. A motion shall not be denied without a contradictory hearing unless, assuming the facts alleged to be true, movant is not entitled to relief."
Art. 65:
"Objections based on defects in the petition and defenses capable of determination as a matter of law may be raised by motion to dismiss.
All other objections to the proceedings may also be raised by motion to dismiss.
[3] The official revision comments to C.Cr.P. Article 213 read in pertinent part as follows:

"(1) Instead of the phrase "felony or misdemeanor," this article contains the term "offense." Art. 933 defines "offense" to include both felony and misdemeanor, and "misdemeanor" to include violations of ordinances.
By use of the term "offense" in Clause (3), the authority of a peace officer to make arrests for crimes committed out of his presence is broadened to include arrests for misdemeanors as well as for felonies. Accord: Ill.Code of Crim.Proc., § 107"
[4] LSA-R.S. 14:108 provides as follows:

"Resisting an officer is the intentional opposition or resistance to, or obstruction of, an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property, or to serve any lawful process or court order, when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.
The phrase `obstruction of' as used herein shall, in addition to its common meaning, signification and connotation mean:
(a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.
(b) Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.
(c) Refusal by the arrested party to give his name and make his identity known to the arresting officer.
(d) Congregates with others on a public street and refuses to move on when ordered by the officer.
Whoever commits the crime of resisting an officer shall be fined not more than five hundred dollars or be imprisoned for not more than six months, or both.
[5] LSA-R.S. 14:36 provides:

"Assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."
LSA-R.S. 14:38 provides:
"Simple assault is an assault committed without a dangerous weapon.
Whoever commits a simple assault shall be fined not more than two hundred dollars, or imprisoned for not more than ninety days, or both."
[6] LSA-C.J.P. Article 13(7) provides:

"`Delinquent act' means an act committed by a person less than seventeen years of age, and designated an offense under the statutes or ordinances of this state, or of another state if the act occurred in another state, or under federal law. It also includes a direct contempt of any court committed by a child and a constructive contempt of court committed by an adjudicated child who repeatedly disobeys the court's judgment of disposition. A child adjudicated a delinquent for a constructive contempt of court shall not be considered to have been adjudicated a delinquent upon termination of the judgment of disposition for contempt. It does not include a traffic violation or an offense applicable only to children."