NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 KJ 1205

STATE OF LOUISIANA IN THE INTEREST OF M. G.

*Judgment Rendered:*  JUN 1 5 2023

* * * * * * * *

Appealed from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Case No. JJ-0172-2021, Division G

The Honorable Scott Gardner, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Gregory Webb<br>Prairieville, Louisiana | Counsel for Appellant<br>M. G. |
| Warren L. Montgomery<br>District Attorney<br>J. Bryant Clark, Jr.<br>Hugo F. Treschwig, III<br>Assistant District Attorneys<br>Covington, Louisiana | Counsel for Appellee<br>State of Louisiana |

* * * * * * * *

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

J. Chutz dissents with reasons.

**THERIOT, J.**

The juvenile, M.G.,[1] was charged by amended petition in juvenile court with one count of first-degree rape of a victim under the age of thirteen, in violation of La. R.S. 14:42(A)(4).[2] M.G. entered a plea of not true and, following a hearing, was adjudicated delinquent by the juvenile court. At a disposition hearing, the juvenile court placed M.G. in the custody of the Office of Juvenile Justice until he turns twenty-one years of age. The sentence was suspended and M.G. was placed on supervised probation until his twenty-first birthday, subject to special conditions. On appeal, the juvenile raises nine assignments of error. After a thorough review of the record and the assignments of error, we affirm the adjudication and disposition.

## FACTS

In December of 2018, eleven-year-old R.H., the victim in this matter, disclosed to his friend M.K. that he had previously been raped by M.G., the juvenile. Shortly thereafter, R.H. told his mother about the same incident, and she immediately called the police. R.H. testified that his family and M.G.'s family were friends and would often spend time together, with R.H. playing with M.G.'s younger brothers. R.H. stated that one day, when he went to get a glass of water at M.G.'s house, M.G. pulled him behind a sheet of drywall that was propped against a wall, pulled his pants down, and anally penetrated him. R.H. was six or seven years old when this occurred.

## SUFFICIENCY OF THE EVIDENCE

---

[1] Pursuant to Rules 5-1(a) and 5-2 of the Uniform Rules of Louisiana Courts of Appeal, the initials of the juveniles and their family members involved in this matter will be used instead of their names. See also La. R.S. 46:1844(W); **State v. Mangrum**, 2020-0243 (La. App. 1st Cir. 2/22/21), 321 So.3d 986, 989 n.1, writ denied, 2021-00401 (La. 10/1/21), 324 So.3d 1050.

[2] The amended petition charges M.G. with one count of aggravated rape of a victim under the age of thirteen and alleges that the act occurred during the time period of January 26, 2013 through January 24, 2017. In 2015, the Louisiana legislature amended La. R.S. 14:42 to be referred to as first degree rape, rather than aggravated rape. 2015 La. Sess. Law Serv. Act 184 (H.B. 139) (West).

In his third and fourth assignments of error, M.G. asserts that the juvenile court erred in finding R.H.'s testimony and allegations credible, and the State failed to prove that M.G. was at least ten years old on the date of the alleged incident.[3]

It is axiomatic that in a juvenile adjudication proceeding, as in any criminal trial, the State must prove beyond a reasonable doubt every element of the offense alleged in the petition. La. Ch. Code art. 883 ("In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition."); **In Re Winship**, 397 U.S. 358, 365, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970) ("The same considerations that demand extreme caution in factfinding to protect the innocent adult apply as well to the innocent child."); **State in the Interest of D.P.B.**, 2002-1742 (La. 5/20/03), 846 So.2d 753, 756-57.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The constitutional standard of review for juveniles is likewise identical to adults. La. Ch. Code art. 883; **State in the Interest of E.S.**, 2018-01763 (La. 10/22/19), 285 So.3d 1046, 1054. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La. Code Crim. P. art. 821(B); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660. The **Jackson** standard of review, incorporated in Article 821, is an objective standard for testing the

---

[3] When issues are raised on appeal contesting the sufficiency of the evidence and alleging one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. **State v. Duhon**, 2018-0593 (La. App. 1st Cir. 12/28/18), 270 So.3d 597, 609, writ denied, 2019-0124 (La. 5/28/19), 273 So.3d 315.

overall evidence, both direct and circumstantial, for reasonable doubt. **State v. Landry**, 2019-0486 (La. App. 1st Cir. 2/21/20), 297 So.3d 8, 14.

Because a review of the law and facts in a juvenile delinquency proceeding is constitutionally mandated, an appellate court must review the record to specifically determine if the trial court was clearly wrong in its factual findings. See **State in the Interest of D.M.**, 97-0628 (La. App. 1st Cir. 11/07/97), 704 So.2d 786, 789-90. In a juvenile case, when there is evidence before the trier of fact that, upon its reasonable evaluation of credibility, furnished a factual basis for its finding, the appellate court should not disturb this factual finding in the absence of manifest error. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. **State in the Interest of Wilkerson**, 542 So.2d 577, 581 (La. App. 1st Cir. 1989). When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. **State v. Patorno**, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144.

Louisiana Revised Statute 14:41(A) defines "rape" as "the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." First degree rape is a "rape committed . . . where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed . . . [w]hen the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense." La. R.S. 14:42(A)(4). First degree rape is a general intent crime. **State in the Interest of E.S.**, 2018-01763 (La. 10/22/19), 285 So. 3d 1046, 1055; see also La. R.S. 14:11 and La. R.S. 14:42. General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed

4

criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2).

As stated above, in December of 2018, R.H. disclosed to his friend M.K. that he had been raped by M.G. M.K. testified at the adjudication hearing that, while on a family camping trip organized through their home school organization, R.H. told him that M.G. pulled him into a room and raped him. R.H. then told M.K.'s mother the same thing. M.K.'s mother also testified that R.H. told her that the juvenile raped him. She testified that R.H. used the word "rape" to describe what happened but did not provide any more information. M.K.'s mother did not ask R.H. any questions but encouraged R.H. to tell his parents. R.H. then told his mother about what happened after leaving the campground.

R.H.'s mother, C.H., testified that her family met M.G.'s family through church prior to R.H.'s birth, and that she had known M.G. for most of his life. The families were very close, sharing holidays and vacations together and later home schooling their children together. C.H. stated that in 2014, while C.H. and her family were leaving M.G.'s family's house, M.G.'s little sister said that the boys were "kissing butts." C.H. and her husband went home and, with their children, tried to get to the bottom of what M.G.'s little sister meant by this. The children told C.H. and her husband that while at M.G.'s house, M.G.'s younger brothers, K.G. and C.G., "engaged with [R.H] in having [R.H.] watch them kiss each other's butts." C.H. testified that the families remained close after this incident until May of 2018, when C.H.'s daughter and M.G.'s sister had a falling out which ultimately terminated the relationship between the families.

C.H. further testified that while the family was discussing the kissing between the younger boys, R.H. experienced his first ever panic attack. According to C.H., the panic attacks continued, and were accompanied by insomnia, night terrors, a lack of appetite, and suicidal thoughts. C.H. testified that these symptoms

only began to subside once R.H. disclosed the alleged rape and the family was able to get R.H. the help he needed. C.H. testified that, after returning home from the camping trip in December of 2018, R.H. stated, "I just wanted to tell you that I told [M.K.] and his mom that [M.G.] had raped me." C.H. testified that R.H. did not want to talk about it or provide additional details at that time, and that she immediately told her husband what R.H. said and then called the police.

R.H. testified that when his family would go to M.G.'s house, he would normally play with M.G.'s younger brothers, K.G. and C.G. R.H. recounted that one day, while playing a board game with K.G. and C.G. in their room, R.H. left the room to go get a glass of water. As he was walking to the kitchen, M.G. pulled him behind a sheet of drywall that was resting lengthwise against a wall, pulled down R.H.'s pants, stuck his penis inside of R.H., and then pulled out. M.G. then told R.H. not to tell anyone and walked away. R.H. testified that he did not know the date this happened, but that he was six or seven years old. He further stated that the rape occurred in between the two times that R.H., K.G., and C.G. played the "kissing game." R.H. confirmed that he experienced insomnia and panic attacks, but testified that those symptoms did not begin during the conversation with his family about the "kissing game" as his mother had previously stated. R.H. further testified that he did not tell anyone about what happened until the camping trip in December of 2018, when he saw M.G. walking with some kids and that "set something off in [his] brain."

R.H. confirmed that he gave a forensic interview at Hope House. A recording of that interview was played at the adjudication hearing. R.H.'s account of the rape during the interview was largely consistent with his testimony. R.H. stated that after M.G. raped him, R.H. then went back into the room with K.G. and C.G. and told them what happened. The boys told R.H. that it was fine and that M.G. would get a spanking. R.H., K.G., and C.G. then went outside to play, at

which point K.G. and C.G. pulled R.H. behind a tree and told him that he better not tell anyone what happened or they would "scold" his "F'ing A." When asked what he thought the boys meant by "scold," R.H. said he thought they meant that they would "flip the situation" and tell people that R.H. was the one that did it. R.H. stated that M.G. was eleven or twelve when this happened. R.H. stated that M.G. had his penis inside of him for about five seconds. When asked whether anything came out of M.G.'s penis, R.H. said no because M.G. hadn't hit puberty yet. When asked whether M.G.'s penis was hard or soft, R.H. said it was "medium."

Jennifer Batina, a clinical therapist at Hope House, testified that she treated R.H. for approximately six months after he disclosed his sexual abuse during a forensic interview. Mrs. Batina stated that, throughout her treatment of R.H., his statements were consistent with his initial disclosure in which he alleged that he was sexually assaulted multiple times, and that M.G.'s brothers, K.G. and C.G., threatened R.H. to keep him from telling anyone what happened.

Sergeant Scott Davis, who previously supervised the Special Victims Unit of the St. Tammany Parish Sheriff's Office (STPSO), testified that he received a call in January of 2020 from R.H.'s father asking him to review a complaint involving his son. Prior to that phone call, STPSO Detective Jacob Jenkins was assigned to the case and conducted the investigation. Although the case was referred to STPSO on December 8, 2018, no arrest warrant was issued until January of 2020. Absent any further investigation, Sergeant Davis determined that there was enough information in the initial report to substantiate a warrant for M.G.'s arrest.

M.G.'s parents both testified during the juvenile's case-in-chief. M.G.'s father testified that the family's home suffered damage from Hurricane Isaac, which made landfall on August 29, 2012, and which led to the family replacing the sheetrock in much of the home. Accordingly, for approximately ten months from late 2012 to 2013, the home was filled with building materials, including sheets of

7

drywall. M.G.'s mother confirmed this time frame. M.G.'s mother also testified that the "kissing game" occurred sometime in 2012 before a church group meeting, and that her daughter informed her of it in 2013. M.G.'s parents both testified to hosting a church group in the beginning of 2012. M.G.'s mother confirmed that she posted a photograph to her Facebook page on March 25, 2012 of the church group meeting held at the family's home. Three of M.G.'s siblings, M.J.G., K.G., and C.G., also testified that the "kissing game" occurred prior to a church group meeting at their home.

In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion. **State v. Robinson**, 2002-1869 (La. 4/14/04), 874 So.2d 66, 79, cert. denied, 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004). It is well settled that, if found to be credible, the testimony of the victim of a sex offense alone is sufficient to establish the elements of the offense, even where the State does not introduce medical, scientific, or physical evidence. **State v. Lily**, 2012-0008 (La. App. 1st Cir. 9/21/12), 111 So.3d 45, 62, writ denied, 2012-2277 (La. 5/31/13), 118 So.3d 386. The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness. **State v. Casey**, 1999-0023 (La. 1/26/00), 775 So. 2d 1022, 1034; see also **State v. Mussall**, 523 So.2d 1305, 1310 (La. 1988). This court must recognize that the juvenile court judge observed the conduct and demeanor of the witnesses and was in the best position to determine credibility and weigh the evidence. See **State in the Interest of D.P.B.**, 846 So.2d at 760. We therefore afford great deference to the trier of fact.

In the instant case, the juvenile court specifically stated in its rationale for adjudicating M.G. delinquent that it found the testimony of [R.H.] "clear, credible, and consistent[.]" Moreover, a thorough review of the record reveals that R.H. was

unequivocal about what happened, where it happened, and how it happened. R.H.'s statements throughout the investigation and the adjudication hearing were largely consistent with one another, and were corroborated by R.H.'s mother's observations about R.H.'s increased anxiety, panic attacks, and insomnia. Accordingly, we cannot say that the juvenile court erred in finding R.H. credible.

Having found sufficient evidence to support the juvenile court's finding that M.G. sexually assaulted R.H., we now turn to the issue of when the assault occurred. The juvenile contends that, based on R.H.'s assertion that the incident occurred in between the two "kissing game" incidents, which occurred prior to a church group in early 2012, the assault would have occurred around the same time. M.G. was born on January 25, 2003, meaning that pursuant to this timeline of events, M.G. was nine years old when the incident occurred.

Louisiana Children's Code article 804(3) defines a "[d]elinquent act" as "an act committed by a child of ten years of age or older which if committed by an adult is designated an offense under the statutes or ordinances of this state[.]" According to the Comments to this section:

> The age of ten is provided for consistency as the threshold age required for prosecution of a child as a delinquent in order to avoid problems of capacity to commit a crime (R.S. 14:13) and to reflect the fact that an offender under the age of ten is more properly regarded as a member of a troubled family. When a child under ten is accused of an offense, the charge can be processed as a family in need of services case under Title VII or, in the interim, as a child in need of supervision case under Title VII(A).

The juvenile is correct that the defense introduced evidence that the incident occurred in early 2012, at which time he would have been nine years old and did not meet the threshold age required for the commitment of a delinquent act. R.H. testified that the rape happened at M.G.'s house, behind a piece of drywall, and that it occurred in between two "kissing games," which occurred a week apart from one another. M.G.'s family members also testified that the "kissing game"

9

incident occurred prior to a church group meeting at their home in 2012. However, M.G.'s father testified that the time frame in which the family would have had pieces of sheetrock in the home was in late 2012 through 2013, after the home suffered hurricane damage.

C.H., R.H.'s mother, testified that she learned of the "kissing game" incident in 2014. She explained that M.G.'s family moved into a new trailer in 2015 or 2016, and that she was informed of the "kissing game" while the family lived in the old trailer. C.H. further testified that R.H.'s panic attacks and other symptoms began at the same time that the family learned about the "kissing game."

Finally, R.H. testified that the rape occurred when he was six or seven years old. R.H. was born on January 18, 2007, making the time of the incident 2013 or 2014. M.G. turned ten on January 25, 2013.

When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of weight given evidence is not subject to appellate review. An appellate court will not re-weigh evidence to overturn a fact finder's determination of guilt. **State v. Alexander**, 2014-1619 (La. App. 1st Cir. 9/18/15), 182 So.3d 126, 131, writ denied, 2015-1912 (La. 1/25/16), 185 So.3d 748. Although evidence of age is necessary for jurisdictional purposes, it is not an essential element of the "delinquent act" which must be proven beyond a reasonable doubt. It is only the alleged "offense" which the child is accused of committing that need be proven beyond a reasonable doubt. **State in the Interest of Lewis**, 386 So.2d 1079, 1087 (La. App. 3d Cir. 1980).

We find that, in the light most favorable to the prosecution, a rational trier of fact could have found that R.H.'s statements established that M.G. committed first degree rape by engaging in anal sex with R.H., who was under the age of thirteen.

10

The district court was entitled to rely on the testimony of R.H. to adjudicate M.G. delinquent, and we defer to the juvenile court's determination of each witness's credibility. Additionally, although there was conflicting testimony as to when the incident occurred and as such, M.G.'s age at the time of the incident, we find that the State presented substantial and credible evidence that the incident occurred sometime around 2013 or 2014, when M.G. was over the age of ten and thus capable of committing a delinquent act. Therefore, we find that these combined assignments of error lack merit.

## 412 EVIDENCE ADMISSIBILITY

In the juvenile's first and second assignments of error, he asserts that the juvenile court erred in excluding portions of C.G.'s testimony pursuant to La. Code Evid. art. 412, and erred in including portions of C.G.'s testimony in the proffered testimony where those portions were not objected to by the State.

Prior to the adjudication hearing, the State filed a motion in limine to exclude any evidence of allegations of sexual assault made against R.H., the victim. The juvenile filed a motion for an *in camera* review of evidence regarding sexual activity between R.H. and C.G., M.G.'s younger brother. Specifically, C.G. reported during the course of the investigation that he and R.H. had a sexual encounter while he was sleeping over at R.H.'s house. C.G. stated that the two boys masturbated together, and then engaged in anal sex with one another. C.G. stated that he was not able to penetrate R.H. because he was "only half hard" but that R.H. was able to penetrate him. C.G. further reported that he confronted R.H. about their previous sexual activity while they were on the camping trip in December of 2018, stating that it made him uncomfortable and that he did not want to do it again, to which R.H. agreed. Later that same day, R.H. disclosed for the first time that he was raped by M.G. The juvenile then filed a memorandum in opposition to the State's motion in limine, arguing that La. Code Evid. art. 412 was

11

inapplicable to the offered evidence pursuant to **State v. Smith**.[4] The trial court deferred ruling on these motions prior to the adjudication hearing, in order to better assess the purpose for which the evidence might be used.

At the adjudication hearing, C.G. testified to the sexual conduct between himself and R.H., at which point the State objected on the grounds that the testimony was inadmissible La. Code Evid. art. 412 evidence. M.G. argued that the purpose of the testimony was to impeach R.H.'s credibility, where the encounter between C.G. and R.H. was similar to R.H.'s allegations against M.G., and where R.H. might have invented the story against M.G. in order to avoid any potential repercussions for C.G. and R.H.'s behavior. The juvenile court sustained the State's objection, stating:

> I have withheld on whether or not this was 412 versus non 412 or nonadmissible [sic] under 412 versus otherwise admissible under [State v. Smith] and its progeny. I rule that it is not evidence of a false allegation of sexual conduct on the part of the alleged victim, and I also rule that it is not admissible in the time context in which it was disclosed. Thus, I exclude, and sustain the objection.

The court ordered that C.G.'s remaining testimony be in the form of proffer testimony. In the proffered testimony, C.G. reiterated that he spoke to R.H. about their encounter during the camping trip and told him that he did not want to do it again.

Louisiana Code of Evidence article 412(A)(1) provides that "[w]hen an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion evidence of the past sexual behavior of the victim is not admissible." This provision is subject to two narrow exceptions: when the evidence is used to determine whether or not the accused was the source of either semen or injury, or when the evidence is offered by the accused to demonstrate the victim's consent to

---

[4] In **State v. Smith**, 98-2045 (La. 9/8/99), 743 So.2d 199, 202-03, the Louisiana Supreme Court held that La. Code Evid. art. 412 is inapplicable in sexual assault cases where defendant seeks to question witnesses regarding the victim's prior false allegations concerning sexual behavior for impeachment purposes.

the behavior. La. Code Evid. art. 412(A)(2)(a) and (b). Before an accused can offer evidence under these exceptions, the accused shall make a written motion in camera to offer such evidence. The motion shall be accompanied by a written statement of evidence setting forth the names and addresses of persons to be called as witnesses. La. Code Evid. art. 412(C)(1). Louisiana Code of Evidence article 412(D) provides that the motion shall be made within the time for filing pre-trial motions specified in La. Code Crim. P. art. 521[5] unless:

(1) The evidence is of past sexual behavior with the accused, and the accused establishes that the motion was not timely made because of an impossibility arising through no fault of his own; or,

(2) The evidence is of past sexual behavior with someone other than the accused, and the accused establishes that the evidence or the issue to which it relates is newly discovered and could not have been obtained earlier through the exercise of due diligence.

The juvenile stipulated that C.G. disclosed this encounter with R.H. on the 26th or 27th of August, 2021. However, the juvenile's motion for an *in camera* review of the proposed testimony was not filed until April 15, 2022, only ten days prior to the adjudication hearing, which began on April 25, 2022. The record reflects that the juvenile did not follow the requirements of La. Code Evid. art. 412(C) and (D) by making a written motion for an *in camera* review of the proposed evidence relating to the past sexual behavior of the victim within the time of filing for pre-trial motions. Rather, even though the original petition was filed in this matter in March of 2021 and the information was known to the juvenile in August of that same year, the juvenile waited until ten days prior to the adjudication hearing to notify the court of the proposed evidence. Accordingly, we find that the juvenile's motion was procedurally untimely, and the juvenile court was correct in granting the State's objection to the evidence on these grounds. See **State v. Kinsel**, 2000-1610 (La. App. 5th Cir. 3/28/01), 783 So.2d 532, 538, writ

---

[5] La. Code Crim. P. art. 521(A) provides that "[p]retrial motions shall be made or filed within thirty days after receipt of initial discovery, unless a different time is provided by law or fixed by the court upon a showing of good cause why thirty days is inadequate."

13

denied, 2001-1230 (La. 3/28/02), 812 So.2d 641; **State v. Billings**, 93-1542 (La. App. 3d Cir. 5/4/94), 640 So.2d 500, 501, writ denied, 94-1437 (La. 10/7/94), 644 So.2d 631, citing **Michigan v. Lucas**, 500 U.S. 145, 149, 111 S.Ct. 1743, 1746, 114 L.Ed.2d 205 (1991) (upholding the constitutionality of the notice and hearing requirements of Michigan's rape shield statute, even though such requirements may diminish a criminal defendant's right to present relevant evidence).

M.G. further contends that the juvenile court erred in including certain portions of C.G.'s testimony in C.G.'s proffered testimony where those portions were not objected to by the State. A thorough review of C.G.'s proffered testimony indicates that the juvenile is incorrect in his assertion that information contained in the proffer transcript "was not objected to and was not testimony of any sexual conduct between C.G. and R.H." In the portion of the transcript referenced by M.G., C.G. testified to his conversation with R.H. regarding their previous sexual encounter and C.G.'s feelings about what happened. Accordingly, the testimony involves evidence of R.H.'s past sexual behavior and is therefore inadmissible pursuant to La. Code Evid. art. 412. For these reasons, we find that the arguments raised by the juvenile in his first and second assignments of error are without merit.

## TIMELY ADJUDICATION

In his fifth and sixth assignments of error, M.G. asserts that the juvenile court erred in granting the State's motion to continue the adjudication hearing and in denying M.G.'s motion to dismiss the adjudication as untimely under La. Ch. Code art. 877.

The Louisiana Children's Code explicitly provides time limitations within which the State must adjudicate juvenile delinquency matters. La. Ch. Code art. 877(B) states that "[i]f the child is not continued in custody, the adjudication hearing shall commence within ninety days of the appearance to answer the petition." If the hearing is not timely commenced, "upon motion of the child, the

14

court shall release a child continued in custody and shall dismiss the petition." La. Ch. Code art. 877(C). However, La. Ch. Code art. 877(D) provides that "[f]or good cause, the court may extend such period." The time limits in La. Ch. Code art. 877 are mandatory and may not be extended absent a showing of good cause. It is incumbent upon the State to make a showing of good cause and obtain an extension before the period has run. **State in the Interest of J.M.**, 2013-2573 (La. 12/9/14), 156 So.3d 1161, 1163. As the term is used in the Children's Code, "good cause" is determined on a case-by-case basis and must be fully supported in the record. **State in the Interest of L.D.**, 2014-1080 (La. 10/15/14), 149 So.3d 763, 765 (per curiam). In considering what constitutes good cause, juvenile judges should not apply a draconian definition. Rather, the judge should be mindful of those situations where defense motions or causes beyond the control of the State may impinge on its ability to prepare for the hearing. See **State in the Interest of R.D.C., Jr.**, 93-1865 (La. 2/28/94), 632 So.2d 745, 749.

In the instant case, M.G. personally appeared to answer the petition on April 19, 2021. Because he was not in continued custody, the hearing should have commenced within ninety days from that date, or July 19, 2021. However, following a request for a defense continuance and upon agreement by both the State and M.G., an initial hearing was set for August 30, 2021. However, on August 29, 2021, Hurricane Ida made landfall in Louisiana and the adjudication hearing was reset. A pre-trial conference was held on September 27, 2021, at which point both parties agreed to a new hearing date of January 20, 2022. However, on January 10, 2022, the State filed a motion to continue the January 20, 2022 hearing date, to which M.G. objected. Following a hearing on January 13, 2022, the juvenile court continued the matter and a hearing date was ultimately set for April 25, 2022. M.G. then filed a motion to dismiss the petition, which the juvenile court denied.

15

The State's basis for seeking a continuance on January 10, 2022 was that it was "unable to prepare for trial due to an ongoing investigation by St. Tammany Parish Sheriff's [O]ffice of allegations made against R.H., the alleged victim[,]" by C.G., the juvenile's younger brother. The State alleged that, while conducting a witness interview of C.G. on August 26, 2021, C.G. alleged that R.H. anally penetrated him. The State relayed this accusation to the sheriff's office, who opened an investigation which was ongoing at the time that the motion to continue was filed. Noting delays in the ongoing investigation caused by Hurricane Ida, staffing issues, and the holiday season, as well as the delayed disclosure of the allegation and that a person accused of delinquent or criminal behavior has attendant rights, the State maintained that it was unable to prepare for adjudication on the instant issue and requested a continuance pending completion of the investigation.

According to the hearing transcript, the juvenile conceded that there was "some substantive basis for [the continuance] motion," but argued that a delay would not necessarily cure those concerns. The juvenile court ultimately granted the continuance over the juvenile's objection, finding "good cause based upon the motion itself." The adjudication was reset to March 14, 2022.

On April 20, 2022, the juvenile court heard M.G.'s motion to dismiss the petition pursuant to La. Ch. Code art. 877. The juvenile court denied the motion, citing **State in the Interest of M.P.**, 2020-00567 (La. 11/4/20), 303 So.3d 622 (per curiam), and finding that the January 2022 continuance granted to the State was done in the best interest of the juvenile, and to accommodate the schedule of both the juvenile and defense counsel.

In **State in the Interest of M.P.**, the Louisiana Supreme Court reviewed the lower court's ruling reversing the juvenile court and dismissing the adjudication as untimely. **State in the Interest of M.P,** 303 So.3d at 622-23. There, the

16

adjudication was continued several times until it finally occurred nearly seven months after the juvenile answered the petition. However, while the juvenile objected to the continuances and findings of good cause, the juvenile never sought supervisory review of those adverse rulings, nor did the juvenile file a motion to dismiss, as required by La. Ch. Code art. 877(C). Accordingly, the court found that the appellate court erred in reversing the juvenile court and reinstated the juvenile court's adjudication and disposition. **Id.**

In the instant case, the juvenile objected to the State's January 2022 continuance and filed a motion to dismiss, but did not object to the juvenile court's denial of the motion to dismiss and did not seek supervisory review. Moreover, the record reflects that after the juvenile court granted the State's continuance and set an adjudication date in March of 2022, the juvenile agreed to yet another continuance until April 2022.

We believe that the juvenile's acquiescence to multiple continuances, coupled with the juvenile court's findings that the State's motion to continue established good cause for a continuance and that a continuance was in the best interest of the juvenile and necessary to accommodate both the State and the juvenile, is sufficient to support a finding of good cause as required by La. Ch. Code art. 877(D). In so doing, we give deference and validity to the actions of the juvenile court judge, who concluded it necessary to continue the adjudication hearings. It can be reasonably assumed that because the juvenile court judge found the continuance to be supported by the State's motion, the judge had good cause and did not continue the hearing date indiscriminately or arbitrarily. See **State in the Interest of D.M.**, 2012-787 (La. App. 5th Cir. 5/30/13), 119 So.3d 763, 767, writ denied, 2013-1562 (La. 2/7/14), 131 So.3d 853. Moreover, because the juvenile court established good cause to grant the State's January 2022 continuance and set the adjudication hearing outside the 90-day limit established by La. Ch.

Code art. 877(B), the juvenile court did not err in denying the juvenile's motion to dismiss the petition. Therefore, we find that these combined assignments of error raised by the juvenile are without merit.

## DENIAL OF POST-TRIAL MOTIONS

In the juvenile's seventh, eighth, and ninth assignments of error, he asserts that the juvenile court erred in denying his motion in arrest of judgment, motion to vacate adjudication, and motion for acquittal.

Although the juvenile's brief lists the above-referenced assignments of error, the brief contains no argument pertaining to these assignments, nor does it contain any citations to the record or any relevant legal authority. Pursuant to Rule 2-12.4(B)(4) of the Uniform Rules of Louisiana Courts of Appeal, all specifications or assignments of error must be briefed, and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed. Similarly, "[t]he court may disregard the argument on an assignment of error or issue for review if suitable reference to the specific page numbers of the record is not made." Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4(B)(3); see also **State v. Jarvis**, 2021-1181 (La. App. 1st Cir. 2/25/22), 340 So.3d 1137, 1141-42 ("A mere statement of an assigned error in brief without argument or citation of authority does not constitute briefing."). Thus, we consider these assignments of error abandoned and the assignments of error are without merit. Accordingly, the juvenile's adjudication and disposition are hereby affirmed.

### ADJUDICATION AFFIRMED; DISPOSITION AFFIRMED.

STATE OF LOUISIANA

IN THE INTEREST

OF M.G.

W R C  b y  C H H

FIRST CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

NO. 2022 KJ 1205

**CHUTZ, J., dissenting.**

The record in this matter does not establish the district court had subject matter jurisdiction to adjudicate M.G. as a delinquent child, because the evidence does not establish by a preponderance of the evidence, much less beyond a reasonable doubt, that M.G. was ten years of age at the time of the alleged delinquent act.[1] Louisiana Children's Code article 102 provides, "The provisions of this Code shall be liberally construed to the end that each child and parent coming within the jurisdiction of the court shall be accorded **due process** ...." (Emphasis added.) Louisiana Children's Code article 303(A) provides, in pertinent part, "A court exercising juvenile jurisdiction shall have exclusive original jurisdiction over: (1) Delinquency proceedings pursuant to Title VIII," as set forth in La Ch. Code articles 801, et seq. La. Ch. Code art. 801 provides:

> The purpose of this Title is to accord **due process** to each **child** who is accused of having committed a **delinquent act** and ensure that he shall receive, preferably in his own home, the care, guidance, and control that will be conducive to his welfare and the best interests of the state and that in those instances when he is removed from the control of his parents, the court shall secure for him care as nearly as possible equivalent to that which the parents should have given him."

(Emphasis added).

La. Ch. Code art 804 provides, in pertinent part,

> As used in this Title:

> (1)(a) "Child" means any person under the age of twenty-one, including an emancipated minor, who commits a delinquent act before attaining seventeen years of age.

> ...

---

[1] Louisiana Children's Code article 104 provides, in pertinent part: "Where procedures are not provided in this Code, or otherwise by law, the court shall proceed in accordance with: (1) The Code of Criminal Procedure in a delinquency proceeding ...."

(3) "Delinquent act" means an act committed by a child of **ten years of age or older** which if committed by an adult is designated an offense under the statutes or ordinances of this state, or of another state if the offense occurred there, or under federal law, except traffic violations....

(4) "Delinquent child" means a child who has committed a delinquent act.

(Emphasis added).[2]

In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La. Child. Code Ann. art. 883. The burden of proof, beyond a reasonable doubt, is no less severe than the burden of proof required in an adult proceeding. *State in Int. of T. B.*, 2020-0929 (La. App. 1 Cir. 2/19/21), 320 So. 3d 1143, 1150.

With regard to M.G.'s age at the time of the alleged delinquent act, the amended complaint alleges that M.G. "during the time period of January 26, 2013 through January 24, 2017" did commit aggravated rape upon R.H. M.G.'s date of birth was January 25, 2003, so in order for him to have been ten years of age or older at the time of the alleged delinquent act, the act would have had to take place after January 26, 2013. As the majority notes, R.H. testified the "rape" occurred between two "kissing game" incidents that took place on separate days at M.G.'s house. According to the testimony of various family members of both R.H. and M.G., the families gathered together before various small group church meetings, of which one or more took place at M.G.'s parents' home. According to the record, the small group

---

[2] The Comments to Article 804(3) relevantly provide, as follows:

The age of ten is provided for consistency as the threshold age required for prosecution of a child as a delinquent *in order to avoid problems of capacity to commit a crime (R.S. 14:13) and to reflect the fact that an offender under the age of ten is more properly regarded as a member of a troubled family.* When a child under ten is accused of an offense, the charge can be processed as a family in need of services case under Title VII or, in the interim, as a child in need of supervision case under Title VII(A).

(Emphasis added.)

2

meetings that M.G.'s family participated in occurred during 2012. R.H. testified that he visited M.G.'s house about once a week and "it was a few days after the first butt kissing event" that M.G. raped him behind a piece of sheet rock. If the alleged delinquent act occurred in 2012, as this testimony supports, M.G. was nine years old when the act occurred.

Because R.H. described that the delinquent act took place behind a piece of sheet rock at M.G.'s parents' house, some of the testimony focused on the period of time within which repair work was being done on the house following Hurricane Isaac. M.G.'s father testified the hurricane caused damage in August 2012, and the repairs were completed by September 2013. No testimony establishes the precise date within this time period on which the alleged delinquent act occurred. While R.H. testified at one point that he was "around six," he also testified that he did not know "what age" he was when the "rape occurred."[3] This testimony alone is not sufficient to establish that M.G. was ten years old at the time of the alleged delinquent act.

While the majority references the testimony of C.H., R.H.'s mother, to support a conclusion that the "'kissing game' incident[s] occurred in 2014," rather than in 2012, a close reading of her testimony reveals merely that C.H. learned of the kissing games in 2014. Her testimony does not support a finding that the "kissing game" incidents or the alleged delinquent act actually occurred in 2014. The record as a whole demonstrates that the parents did not learn of the "kissing game" incidents until 2014, and because R.H. did not report the "rape" until 2018, they had no knowledge of the alleged delinquent act until then.

Even when considering the record evidence in the light most favorable to the prosecution, a rational trier of fact could not have concluded that M.G. was ten years

---

[3] R.H.'s date of birth was January 18, 2007, establishing he was four years younger than M.G.

3

old at the time of the incident. Thus, the record does not establish that a "delinquent act" occurred. The district court's delinquency adjudication and the majority's affirmation do not afford due process to MG. As such, I would reverse the delinquency adjudication.

4